VERMONT & MASSACHUSETTS RAILROAD COMPANY *vs.* FITCH-BURG RAILROAD COMPANY.*

A railroad company which for a reasonable compensation receives into its exclusive custody and control and draws over its railroad the cars of another and connecting railroad company, with their passengers and freight, is, in the absence of any special contract to the contrary, liable as a common carrier for any injury to the cars so received, while the same are in transit over its road.

A railroad company by special contract with another and connecting railroad company agreed to draw over its own railroad the cars of the latter company with their passengers and freight, for a certain specified compensation; and the latter company agreed to save the transporting company harmless from all claims and damages arising from any injury to passengers, or loss of or damage to baggage, goods and freight, while in transit over the same, unless such injury, loss or damage should be clearly shown to arise from the negligence or default of the transporting company, or from some defect in its road, in which case the claims, damages and loss were to be borne by the transporting company. Certain cars so received and drawn under this contract were injured while in transit in consequence of a defect in the railroad track of the transporting company, which defect was caused without the company's fault. *Held*, that the transporting company were liable to the other company therefor, either upon the contract, or else as common carriers.

CONTRACT brought in this court to recover damages for an injury to nine cars of the plaintiffs, while being transported over

---

* This case was from Middlesex County.

the defendants' railroad.	The action was brought upon a written agreement between the parties, dated August 1st 1854, the material portions of which were as follows:

" The Fitchburg Railroad Company, in consideration of the covenants and agreements of the Vermont and Massachusetts Railroad Company, hereinafter contained, covenant and agree to and with the said Vermont and Massachusetts Railroad Company to furnish the requisite motive power, and draw over the railroad of the said Fitchburg Railroad Company, all the passenger and freight cars of the said Vermont and Massachusetts Railroad Company, and the roads connected therewith, and the passengers and freight in said cars, at such times, and at such proper rates of speed, as shall be to the mutual advantage of both corporations, and to furnish all the necessary depot accommodations on said Fitchburg Railroad for passenger and freight business of the Vermont and Massachusetts Railroad Company, and the roads connected therewith, and to do the loading and unloading of such freight at stations on the Fitchburg Railroad, as they have heretofore done.

" The Fitchburg Railroad Company also covenant and agree to collect all such bills as may be payable at stations on their road for freight, and charges for freight, coming over the Vermont and Massachusetts Railroad, and the roads connected therewith, and guarantee the payment of such bills, and to furnish and sell the usual passenger tickets at all stations on the Fitchburg Railroad where tickets are now sold or may be sold during the continuance of this contract, to all stations on the Vermont and Massachusetts Railroad, and the roads connected therewith.

" In consideration whereof, the said Vermont and Massachusetts Railroad Company covenant and agree to and with the said Fitchburg Railroad Company to pay the said Fitchburg Railroad Company for the transportation of all passengers over the Fitchburg Railroad, as above provided and agreed, as follows, that is to say: [here followed a list of rates for passengers, and afterwards another list for freight.]

" The Vermont and Massachusetts Railroad Company further

covenant and agree to indemnify and save harmless the Fitchburg Railroad Company of and from all claims, damages, costs and expenses, of every nature and description, arising from or in any way growing out of or connected with any injury to any passenger or passengers, and any loss or damage to any baggage or property of any passenger or passengers, and any loss of or damage to any and all goods and freight of every description, going to or coming from the Vermont and Massachusetts Railroad, and the roads connected therewith, while in transit over the Fitchburg Railroad, or in its depots, or upon its premises, unless such injury, loss or damage, shall be clearly shown to arise from or be occasioned by the negligence or default of the Fitchburg Railroad Company, its servants or agents, or from some defect in the road, buildings or machinery of the said Fitchburg Railroad Company, in which case any and all claims, damages, costs and expenses arising from or resulting from such negligence, default or defect shall be borne by the Fitchburg Railroad Company."

The following facts were agreed :

On the 7th of March 1864, a train of freight cars belonging to the plaintiffs, and loaded with cattle and sheep and other things, came down over the plaintiffs' railroad, which connects with the defendants' railroad at Fitchburg, hauled by the plaintiffs' engine, and in the charge of the servants of the plaintiffs. Upon the arrival of the train at Fitchburg, the engine of the plaintiffs was taken off the train, and the engine of the defendants attached thereto, and the train proceeded on its way to Boston, under the conduct of the servants of the defendants, and under said agreement. While said train was in transit over the railroad of the defendants, in the town of Weston, at about midnight, a portion of the train was thrown from the track, and the cars of the plaintiffs injured, and some of the cattle and sheep were killed, and some of the other property destroyed. The cause of the accident was as follows:

The flume of the millpond of John and Samuel W. Dudley, in said town of Weston, and about one mile from the railroad, being rotten, unsubstantial and insecure, broke away, in the

night of the said 7th of March, and by reason thereof the waters of the pond were suddenly released, and came down in extraordinary and unusual quantity and with great velocity, over-flowing the roads and the surrounding fields, and flowed along the side of the defendants' railroad, and, meeting with obstruction, overflowed the road-bed of the railroad, and washed away the embankment from beneath the rails and sleepers. The rails, being unsupported when the train passed over that part of the defendants' railroad, bent and broke, and a portion of the train was thrown from the track, and the cars of the plaintiffs were injured and broken, so as to be unfit for use, and the cattle and sheep killed, as before mentioned.

The engineer and fireman in charge of the engine, and the brakemen on the train, at the time of the accident, were the servants of the defendants.

The railroad of the defendants, at the point where the accident happened, was properly constructed, and was in a proper and safe condition, until washed away by the waters of the pond, as before mentioned.

The freight train was suitably equipped and conducted, and no fault or negligence is attributed either to the plaintiffs or defendants, so far as the condition of the road or the cars is concerned, or in the conduct of the train, unless as is herein stated Both plaintiffs and defendants are common carriers, except so far as modified by this agreement.

The case was reserved, by *Foster*, J., for the determination of the full court, with an agreement that, if the court should be of opinion that the plaintiffs are entitled to recover, the case should be sent to an assessor to ascertain the damages.

It was agreed at the argument that the case should be decided on the merits, if in any form of action the plaintiffs have a remedy on the facts agreed.

*D. S. Richardson*, for the plaintiffs. No case has been found involving the question here raised. All connecting roads form business contracts for through business. The present contract provides for damages to passengers and freight, but nothing is said about cars. The compensation to be paid is measured by

the passengers and freight. It may be that "freight" includes the cars. But the liability of the defendants is established on other grounds. By the contract, the plaintiffs' cars were wholly under the defendants' care and control, and the plaintiffs could take no precaution that would save them. It is wholly immaterial how the road became defective, it not being by the act of God or the public enemy. The liability of the defendants as common carriers was in no way modified by the contract; and cannot be modified by implication. Railroad corporations are common carriers as to cars drawn by them. *New Jersey Railroad, &c.* v. *Pennsylvania Railroad,* 3 Dutcher, 100. When the defendants contracted to draw the plaintiffs' merchandise in the plaintiffs' cars, the law implied a promise as binding as if made in express language, that their road and machinery were and should remain fit for the purpose of carrying out that contract. Any unfitness is negligence in law. *Lyon* v. *Mells,* 5 East, 473. *Proprietors of the Trent Navig.* v. *Wood,* 3 Esp. R. 127. *New Jersey Steam Navig. Co.* v. *Merchants' Bank,* 6 How. 383. *Camden & Amboy Railroad* v. *Burke,* 13 Wend. 627, 628. *Putnam* v. *Wood,* 3 Mass. 481. *White* v. *Winnisimmet Co.* 7 Cush. 160. *New Brunswick Steamboat Co.* v. *Tiers,* 4 Zabr. (N. J.) 701.

*H. C. Hutchins,* for the defendants. The contract provides for the case of injury to passengers or their baggage, or to freight, but is wholly silent as to damage to the plaintiffs' cars. This omission was not casual, but designed. Towards the passengers and their baggage, and the freight, the defendants would sustain the relation of common carriers. *Schopman* v. *Boston & Worcester Railroad,* 9 Cush. 24. But the cars belonged to the plaintiffs themselves. They were not freight, nor transported or paid for as such, nor were the defendants under any obligation as common carriers to draw them. They were simply used to save transshipment. Besides; if the terms of the contract are broad enough to include the cars, the defendants are not liable, because the injury can in no way be attributed to negligence of the defendants; and by the true construction of the contract the defendants should not be held liable for a defect

in their road, unless it was in some way attributable to their negligence.

Nor would the defendants be liable if there had been no con-tract, and the transportation had been made under the statute applicable to such cases. Gen. Sts. *c.* 63, §§ 117, 118. *Lexington & West Cambridge Railroad* v. *Fitchburg Railroad,* 14 Gray, 266.

If then the defendants are not liable by virtue of the contract, or by virtue of the statute, they are not answerable at common law. They have been guilty of no negligence. Indeed, the injury arose from a cause against which no prudence of their's could guard. *Cumberland Valley Railroad* v. *Hughes,* 11 Penn. State R. 141. 1 Redfield on Railw. 431. So far as the cars were concerned, the defendants were merely bailees. They could not require prepayment of freight for them ; they had no lien upon them ; there was no time or place of delivery for them, and no time when liability as common carriers for them should begin or cease. The defendants were bound to exercise only reasonable care of the cars.

Bigelow, C. J. In the view which we take of this case, it is quite immaterial to its decision whether the defendants are held liable under their written contract with the plaintiffs, or by virtue of the legal responsibility assumed by them in undertaking to receive and transport over their road the cars of the plaintiffs. If, by the true construction of the contract, it is held that it was intended to include within its terms the cars in which goods and merchandise are transported, then, on the facts stated, we think it clear that the defendants are liable in this action. The stipulation is clear and explicit that the defendants shall bear all damages arising from the negligence of their servants or agents, or from any defect in the road. There can be no doubt that the proximate cause of the destruction of the cars belonging to the plaintiffs was a defect in the road. The bed or roadway on which the rails of the defendants' road were laid was washed away, leaving them without support, so that they were in-sufficient to bear the weight of the cars in their transit over them. Whatever may have been the origin or cause of this condition

of the road, it is clear beyond controversy that it was in a defective and unsafe condition, and that this condition was the direct and immediate cause of the injury to and destruction of the plaintiffs' property. The agreement of the defendants is not that they will be responsible for defects in the road arising from their own negligence or the carelessness of their servants. If such had been the stipulation, the argument urged in behalf of the defendants would have had great force. But the agreement is that they shall be liable for all damages caused by such negligence or carelessness, or from a defect in the road. The insertion of this last clause in the connection in which it stands, and in a disjunctive form, removes all ambiguity, and indicates a clear intention to assume a liability for all losses arising from a defective condition of the road, whether attributable to the negligence of the defendants or to some other independent cause. Looking therefore at the terms of the written contract only, we are of opinion that the defendants would be liable in this action, on the facts stated, if it should be held that the parties intended to embrace within the stipulations the cars of the plaintiffs while passing over the road of the defendants.

But if, as we are inclined to think, the written agreement is confined to goods and merchandise only which may be transported over the defendants' road in the cars of the plaintiffs, and do not include the latter, we are of opinion, on full consideration, that the defendants are liable for the destruction of the cars of the plaintiffs, under the legal duty and responsibility which attached to them in consequence of their general undertaking to transport them over their road. We can see no sufficient reason for holding that, in performing this service, they are not to be regarded as common carriers, and chargeable for any loss not caused by the act of God or the public enemy. It is not denied that the ordinary business of the defendants is that of common carriers, and that where there is no express stipulation for a more restricted liability, or the nature of the service which they are called on to render is not such as to impose on them a different kind or degree of responsibility, they would be liable as insurers of property intrusted to them for transportation. But

it is urged by the defendants that their relation towards the plaintiffs, as owners of a railroad connecting with their own, and the consequent duty which they are required to perform of drawing the cars of the plaintiffs over their road, are of a peculiar and exceptional nature, and that they ought not to be held to be carriers within the common law rule in performing this service. It seems to us however that the reasons on which this rule is founded do apply with equal force to them when so employed, as when engaged in the ordinary business which they undertake to carry on. They act in their capacity as public carriers, and receive the cars to transport them from place to place ; they draw them by their own engines, the plaintiffs being restrained by law, Gen. Sts. *c.* 63, § 119, from using their own motive power for the purpose ; they take the cars into their exclusive custody and control, the plaintiffs and their servants having no charge or care over them whatever ; and they receive for the services rendered a reasonable compensation, in proportion to the time, labor and expense incurred and the risk which they run. It seems to us that all the elements which go to make up the legal characteristics of the business of a common carrier are included within this statement of the kind of service which the defendants render in transporting the cars of the plaintiffs. It cannot be said that the obligation which the statute imposes on the defendants to draw the cars of the plaintiffs over their road, Gen. Sts. *c.* 63, § 117, affords any ground for limiting their liability for loss or injury to them while in their possession. A like duty is imposed by law on every common carrier. His employment is a public one, and he is bound to carry all articles offered to him, coming within the scope of his ordinary employ ment, for a reasonable compensation.

We are unable to see any valid ground for a distinction between the case at bar and the familiar one of a common carrier undertaking to transport the property of another carrier over the route upon which the former usually transacts his business. A ferryman undertaking to carry a wagon or a coach used in transporting merchandise or passengers would be liable as a common carrier for the articles while in his care and custody

in crossing the ferry. A carrier who receives a box belonging to another carrier, in which merchandise is inclosed, for the purpose of transportation, would be liable for the loss of the box to the carrier who owned it as well as for the merchandise contained in it. The true ground on which the liability in all these cases rests is, that the owner of the property carried surrenders all control and custody over it, and commits it to the exclusive charge of the person who undertakes to carry it. In the cases where the owners of tow boats have been held not to be .iable for injuries to or the loss of boats which they were engaged in towing from place to place, the ground of the decisions is that they do not in performing the services take exclusive possession and control of the boats attached to them, but that the officers and men belonging to the latter remain on board and exercise a partial direction over their movements. No such ground of distinction exists in the case at bar.

For these reasons we are of opinion that the defendants are liable as common carriers for the destruction of the plaintiffs' cars, while they were in transit over the road of the defendants. See *New Jersey Railroad, &c.* v. *Pennsylvania Railroad,* 3 Dutcher, 100.; *Smith* v. *Pierce,* 1 Louis. 349 ; *Alexander* v. *Greene,* 3 Hill, 9; *S. C.* 7 Hill, 533 ; *Sproul* v. *Hemmingway,* 14 Pick. 1. *Judgment for the plaintiffs.*